UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| RUBY HOOKER, ET AL | CIVIL ACTION NO. 16-cv-0229 |
| VERSUS | JUDGE JAMES |
| RICKY CAMPBELL, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Ruby and Alice Hooker ("Plaintiffs") filed this civil rights action against the Franklin Parish Police Jury, its members, and an engineer associated with the parish. Plaintiffs seek damages and injunctive relief based on allegations that the defendants have failed to provide adequate water and other services to the largely minority population in their neighborhood, while white citizens in nearby areas have been afforded services. Before the court are (1) a Motion for Partial Dismissal (Doc. 5) filed by the police jury and its members and (2) a Motion for Partial Dismissal (Doc. 13) filed by Kenneth McManus and McManus Consulting Engineers. For the reasons that follow, it is recommended that the motions be granted.

**The Allegations**

The motions challenge certain aspects of the complaint for failure to state a claim on which relief may be granted. When ruling on such a motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197,

2200 (2007). Accordingly, the facts set forth below are a summary of the allegations found in the complaint.

Plaintiffs' homes are located on the east end of Ellis Lane in Franklin Parish, where 95% of the residents are elderly and disabled. Plaintiffs and the other residents have "old contaminated pesticide well water that is unsafe for consumption and domestic use." The area residents "are unable to dig ditches, join and install 10 to 11 miles of water pipes along their road in order to receive fresh water."

Defendants have maintained a racially discriminatory policy and practice of intentionally denying public water services to Plaintiffs and other residents of east Ellis Lane "because they are African American and/or because they reside in a predominately African American neighborhood." Plaintiffs complain that the residents of east Ellis Lane have been denied public water service, street paving, and adequate roads and drainage "for nearly 40 years." At the same time, Defendants have provided water service, paved roads, and other public amenities to white residents who live on the west end of the road.

Plaintiffs allege that the Franklin Parish Police Jury entered into a contract in July 2012 and secured over $339,000 through the LA Step Program from Louisiana's Office of Community Development. The funds were allegedly intended to provide water and waste service to communities of low and moderate income residents, specifically the residents on the east end of Ellis Lane. Plaintiffs allege that an additional amount of more than $76,000 was awarded by the Community Water Enrichment Program.

Plaintiffs accuse the police jury and engineer Ken McManus of McManus Consulting Engineering of consistently and intentionally delaying the construction and, thereby, failing to fulfill the obligations of the project to provide clean water services to Plaintiffs and other nearby residents. Plaintiffs allege that the police jury did provide a water project for the west end of Ellis Lane, and it connected those residents to the public water system with 100% of the work performed by the police jury. Plaintiffs allege that they and their neighbors, however, are required to dig and lay 20 to 25 miles of water pipe along the roadway in order to receive fresh water, and they have not had any formal assistance or direction. Plaintiffs fault Mr. McManus for failing to properly oversee and supervise the water project. They list counts for relief pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VI of the Civil Rights Act.

**Claims on Behalf of Non-Party Residents of East Ellis Lane**

Plaintiffs' complaint begins by stating that it is the complaint "of Ruby Hooker and Alice Hooker," and it does not include any assertion of a class action. Paragraph 5 describes the parties and lists as plaintiffs only Ruby Hooker and Alice Hooker. The complaint does, however, complain in several places that both Plaintiffs and other residents of their neighborhood have been the victims of discrimination.

Both the Franklin Parish defendants and the McManus defendants argue that Plaintiffs cannot seek relief on behalf of others who are not parties to this suit, and they ask that the demands on behalf of other residents of the neighborhood be dismissed. The argument is

based largely on the proposition that Plaintiffs do not have grounds to assert third-party standing.

Plaintiffs respond that they have standing to bring their own claims, and they point out that Defendants do not attack their individual standing. Plaintiffs insist that they do not base their claims on the rights of third persons, but on their own interests. Plaintiffs do not, however, state clearly that they are not attempting to assert the claims or rights of any parties other than themselves. And they go on to argue that their suit is necessary to ensure protection of the rights asserted "not only on their behalves, but also on behalf of" their neighbors. This ambiguity in Plaintiffs' position makes it necessary to discuss whether Plaintiffs have the right to assert claims on behalf of their neighbors.

A litigant is ordinarily confined to asserting his or her own legal rights and interests, and he cannot rest a claim to relief on the legal rights or interests of third parties. Powers v. Ohio, 111 S.Ct. 1364, 1370 (1991). But litigants may bring actions on behalf of third parties if three criteria are satisfied: (1) the litigant must have suffered an injury in fact that gives him sufficiently concrete interest in the outcome of the issue in dispute; (2) the litigant must have a close relation to the third party; and (3) there must exist some hindrance to the third party's ability to protect his or her own interest. Id. at 1370-71.

The Supreme Court has counseled that the courts must hesitate before resolving a controversy, even if within their constitutional power, on the basis of the rights of third persons who are not parties to the suit. Singleton v. Wulff, 96 S.Ct. 2868, 2874 (1976). One

reason is that courts should not adjudicated rights unnecessarily, and it may be that the holders of those rights either do not wish to assert them or will be able to enjoy them regardless of whether the in-court litigant is successful or not. A second reason is that the third parties themselves "usually will be the best proponents of their own rights." Id. The courts "should prefer to construe legal rights only when the most effective advocates of those rights are before them." Id.

Plaintiffs should not be allowed to assert the rights of their neighbors in this case because, assuming other requirements could be met, there is no specific allegation of a hindrance to the rights of the neighbors to protect their own interests. An example of where the Court has allowed an assertion of a third-party right is when the NAACP resisted a court order to divulge the names of its members. The Court reasoned that to require the right to be claimed by the members themselves would nullify the very right to privacy that was at issue. NAACP v. Alabama, 78 S.Ct. 1163 (1958). The Court has also allowed physicians to assert the necessarily private and personal interests of patients who seek to secure an abortion. Singleton, 96 S.Ct. at 2875.

There is no allegation or suggestion of any legal hindrance to Plaintiffs' neighbors asserting their own rights, just as Plaintiffs have done in this suit. There is no reason that the neighbors would be chilled from asserting such rights, and it may be that the neighbors would prefer to assert different claims or theories or employ different counsel. The neighbors may also not share the same view as Plaintiffs regarding the water project, or they may prefer to

seek a political rather than a judicial remedy. The neighbors might also prefer to avoid the possibility of being bound by the results in this case, over which they have no control. For these reasons, Plaintiffs should be allowed to pursue only their own claims and not those of their neighbors.

**Police Jurors: Official Capacity Claims**

Plaintiffs' complaint names as defendants both the Franklin Parish Police Jury and the several members of the police jury in their official capacities. Defendants argue that the official capacity claims are redundant and should be dismissed. They are correct.

The Eleventh Amendment limits jurisdiction as to suits against a state, but it is "settled law that the parishes are not protected from suit by the Eleventh Amendment." U.S. v. St. Bernard Parish, 756 F.2d 1116, 1126 (5th Cir. 1985). Because local governments such as a parish police jury can be sued directly, "[t]here is no longer a need to bring official-capacity actions against local government officials." Kentucky v. Graham, 105 S.Ct. 3099, 3106 n.14 (1985).

Based on these principles, courts have held that when the government entity itself is a defendant, claims against entity members/officers in their official capacities are redundant and appropriate for dismissal. Castro Romero v. Becken, 256 F.3d 349, 354 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers ... in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); Broussard v. Lafayette City-Parish

Consolidated Government, 45 F.Supp.3d 553, 571 (W. D. La. 2014) ("When, as in this case, the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and ... it is appropriate to dismiss them."); and Glaster v. City of Mansfield, 2015 WL 852412, *10 (W. D. La. 2015) (same; collecting cases). It may streamline the litigation, and it will not prejudice Plaintiffs in the slightest to eliminate the jurors in their official capacities as defendants. The redundant claims should be dismissed.

**Franklin Parish: Punitive Damages**

Plaintiffs allege in paragraph 15 of their complaint that the conduct of the police jury and all of the defendants justifies punitive damages. The Franklin Parish movants concede that punitive damages may be recoverable on individual capacity claims under 42 U.S.C. § 1983 if a proper showing is made, but they point out that Section 1983 does not allow the recovery of punitive damages against a local governmental entity such as a parish. City of Newport v. Fact Concerts, Inc., 101 S.Ct. 2748 (1981); Stern v. Hinds County, 436 Fed. Appx. 381 (5th Cir. 2011).

Plaintiffs' memorandum dedicates a paragraph to responding to the punitive damages issue. They state that the defendants have conceded that punitive damages are recoverable as to individual capacity claims. Plaintiffs do not, however, concede that punitive damages are not recoverable against Franklin Parish under Section 1983. Rather, they simply do not

address the issue. There is no legal authority for such an award, so any claim for punitive damages against Franklin Parish or the police jury under Section 1983 should be dismissed.

**Fair Housing Act**

Plaintiffs, in the final sentence of their assertion of a count under Section 1983, alleged that the defendants have engaged in the alleged practices "with the intent of denying equal housing opportunities to Plaintiffs." Complaint, ¶ 26.

The Franklin Parish movants argue that the complaint does not squarely allege a claim under the Fair Housing Act or allege facts that would explain how the defendants denied them equal housing opportunities. Plaintiff did not address this issue in their response to the Franklin Parish motion. The McManus defendants also argue that the complaint does not state a viable claim in connection with the fair housing opportunity allegation. Plaintiffs responded to the McManus motion with a concession that "Plaintiffs do not press a Fair Housing Act claim in their complaint as a ground for relief and there is nothing to dismiss on this point." Doc. 16, p. 8.

Thus, it appears that there never was a Fair Housing Act claim, and we are dealing with a strawman. To avoid any doubt in later proceedings, it is recommended that any claim under the Fair Housing Act be dismissed without prejudice. Plaintiffs will suffer no harm, and Defendants can be assured that they need not defend against such a claim.

**Police Jurors: Individual Capacity Claims**

    **A. Rule 12(b)(6) Requirements**

The police jurors challenge the individual capacity claims against them on the grounds that (1) the allegations are insufficient to state a claim on which relief may be granted and (2) the jurors are entitled to legislative immunity. In assessing the Rule 12(b)(6) challenge, the court must accept as true all well-pleaded facts in the complaint and view those facts in the light most favorable to the plaintiff. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007).

The facts alleged, taken as true, must state a claim that is plausible on its face. Amacker v. Renaissance Asset Mgmt. LLC, 657 F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). A complaint is not sufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Id. (quoting Twombly, 127 S.Ct. at 1965).

### B. Section 1983; Personal Involvement

To state a Section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000). A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation. Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir.1999). A supervisor is not personally liable for a subordinate's actions in which he had no involvement. James v. Texas Collin County, 535 F.3d 365 (5th Cir. 2008).

### C. Analysis of Section 1983 Claims Against Individual Jurors

The complaint, in paragraphs 8-13, lists the individual members of the police jury as defendants. The remainder of the complaint targets allegations at the police jury as an entity, and it occasionally alleges that unspecified "defendants" were responsible for certain action or inaction.

Plaintiffs allege on page six of their complaint that they and other residents "have attended police jury meetings, contacted their representative, and contacted (Police Jury) President Ricky Campbell all to no avail." Other than in the Title VI count, which will be discussed below, there are no other mentions of any particular police jurors.

The jurors argue that these allegations do not describe any kind of personal involvement that could make any of them personally liable for a constitutional violation.

Plaintiffs respond that allegations of personal involvement are only one theory that can be used to establish causation under Section 1983. They point to the possibility of asserting a claim against a supervisor whose policies or failures to train subordinates are a moving force behind a violation committed by a subordinate. Plaintiffs do not, however, point to any facts that would give rise to a plausible claim for relief under that theory. The only facts they point to are their allegations that Plaintiffs attended meetings at which the police jurors were present, from which they conclude that the jurors' actions/failure-to-act manifested a callous indifference to the Plaintiffs' rights to services equal to those afforded to their neighbors.

The scant facts pointed to by Plaintiffs are simply not enough to state a claim that any individual police juror is personally liable for a constitutional violation. Plaintiffs do not identify any particular action, or even a vote, by any particular juror(s) that they assert violated a constitutional right. Mere service as a member of the legislative body with which Plaintiffs are dissatisfied is not sufficient to impose personal liability on a juror.

This leads to the related defense of legislative immunity, which the jurors have invoked. It provides an absolute immunity for local government officials based on actions they take when fulfilling their legislative functions. Hughes v. Tarrant County, 948 F.2d 918 (5th Cir. 1991); Calhoun v. St. Bernard Parish, 937 F.2d 172 (5th Cir. 1991); Deshotels v. Village of Pine Prairie, 2012 WL 1712358 *4-5 (W.D. La. 2012).

Plaintiffs argue that legislative immunity is inapplicable because the acts at issue are more administrative rather than legislative. But jurors would be entitled to qualified

immunity even for non-legislative acts. Hughes, 948 F.2d at 920. Frankly, the scant facts provided in the complaint directed at the individual jurors, or explaining how the decisions have been made regarding water service in the area, do not allow a determination of whether the jurors are accused of actions that would fit within absolute legislative immunity or merely qualified administrative immunity. In either event, there are insufficient facts set forth in the complaint to overcome those immunity hurdles and allow the imposition of personal liability against any individual juror for violating Plaintiff's constitutional rights.

### D. Analysis of Title VI Claim Against Individual Jurors

Count three of the complaint asserts a claim under Title VI of the Civil Rights Act of 1964 and names each of the individual jurors. The relevant statute provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

The individual jurors attack the claims against them on the grounds that the only proper defendant in a Title VI case is the entity that receives federal financial assistance. They are correct. Muthukumar v. Kiel, 478 Fed. Appx. 156, 159 (5th Cir. 2012) ("We agree with the Eleventh Circuit that Title VI permits suits only against public or private entities receiving funds and not against individuals."), citing Shotz v. City of Plantation, 344 F.3d 1161, 1171 (11th Cir. 2003) ("It is beyond question ... that individuals are not liable under Title VI."); and Price, ex rel. Price v. Louisiana Department of Education, 329 Fed. Appx.

559, 561 (5th Cir. 2009) (" the district court correctly noted that only public and private entities can be held liable under Title VI").

Plaintiffs offer no response to this legal authority. Their only response is a single sentence that their "Title VI claims against the individual police jurors should stand." Absent any legal basis for that assertion, the Title VI claims against the individual jurors should be dismissed, along with any Section 1983 claims against them.

**Franklin Parish Defendants: Section 1981 Claim**

Plaintiffs assert a count pursuant to 42 U.S.C. § 1981. That statute provides, among other things, that all persons shall have the same right to make and enforce contracts as is enjoyed by white citizens. Plaintiffs allege that, "[b]y the actions described above," defendants have violated that right. Complaint, ¶ 17. They add that the defendants have engaged in a policy or pattern of discrimination against Plaintiffs and their neighbors due to their race and the racial composition of their neighborhood. ¶ 18.

A claim under the statute that alleges racial discrimination in connection with a contract must allege some tangible attempt to contract that was in some way thwarted. Morris v. Dillard Department Stores, Inc., 277 F.3d 743, 751-52 (5th Cir. 2001). The Supreme Court has stressed that any claim brought under Section 1981 "must initially identify an impaired 'contractual relationship,' ... under which the plaintiff has rights." Domino's Pizza, Inc. v. McDonald, 126 S.Ct. 1249 (2006).

The Franklin Parish defendants squarely attacked the Section 1981 claim and argued that the complaint alleged no particular facts that there was a contractual relationship between them and Plaintiffs that had been denied or impaired based on racial discrimination. Plaintiffs did not respond to that attack in their memorandum or otherwise attempt to articulate a basis for a Section 1981 claim against the Franklin Parish defendants.

The complaint does not allege facts that, taken as true, would state a facially plausible Section 1981 claim against the Franklin Parish defendants. All such claims against the Franklin Parish defendants should be dismissed.

**McManus Defendants: Title VI**

Kenneth McManus and McManus Consulting challenge the Title VI claim that is asserted against them and all other defendants. Mr. McManus argues that he is not an entity that can be held liable under the statute, and Plaintiffs concede that point. Plaintiffs argue that McManus Consulting, however, is an entity and not immune from suit because the statute "requires that the public bodies or private entities receiving the benefits of [federal funding] refrain from racial discrimination." United States v. Baylor University Medical Center, 736 F.2d 1039, 1044 n.9 (5th Cir. 1984).

Plaintiffs alleged in ¶ 28 of the complaint that McManus Consulting was a "recipient[] of federal financial assistance" and thus covered by Title VI. Plaintiffs also alleged that the firm was paid by the police jury to provide services pursuant to a grant that Plaintiffs imply had federal funding as a source. Plaintiffs argued in their memorandum that these facts make

McManus Consulting a proper party to a Title VI claim. McManus did not respond to this argument in its reply.

Plaintiffs have alleged just enough to warrant further proceedings with respect to a Title VI claim against McManus Consulting, which is free to offer other defenses to the claim or contest it by more substantive means. The Title VI claim against Mr. McManus should be dismissed.

**McManus Defendants: Section 1981**

Plaintiffs broadly include all "defendants" in their Section 1981 count. The McManus defendants attack the claim against them. They argue that Plaintiffs did not identify a breach of a contractual relationship between them and Plaintiffs. Plaintiffs respond in their memorandum that they were beneficiaries of a contract between McManus and the police jury; the parish paid McManus to provide services for Plaintiffs' portion of Ellis Lane, and the McManus defendants refused to provide those services based on a discriminatory motive.

The Supreme Court has not decided whether a third-party beneficiary to a contract may assert a valid claim under Section 1981. Domino's Pizza, 126 S.Ct. at 1249 n.3 (" ... we do not mean to exclude the possibility that a third-party intended beneficiary of a contract may have rights under § 1981 ... [but] [n]either do we mean to affirm that possibility."). But it has said that "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship" or "impairs an existing contractual relationship" but only where "the plaintiff has or would have rights under the existing or proposed contractual

relationship." Id. at 1250; Grambling University Nat. Alumni Ass'n v. Board of Sup'rs for Louisiana System, 286 Fed. Appx. 864, 869 (5th Cir. 2008). Accordingly, the sole shareholder and president of a corporation could not assert a Section 1981 claim based on the breach of contracts entered into by the corporation. "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." Domino's Pizza, 126 S.Ct. at 1252.

There are two possible contracts mentioned in the complaint. First, the complaint alleges that the police jury entered into a contract in July 2012 and secured funds from the state to provide water service to low income residents. The complaint is not clear, but it suggests that the parties to that contract were the police jury and a state agency. There is no direct allegation that either of the McManus defendants was a party to the contract, so there is no basis for a Section 1981 claim related to that contract.

Second, the complaint alleges that the parish and the McManus defendants have consistently and intentionally delayed construction of a water system, that Kenneth McManus "failed to oversee and supervise the water project," did not provide project inspections per regulations, and did not finalize plans for a booster pump which McManus should have known was a requirement prior to the laying of any pipes. The complaint does not clearly describe the legal relationship between the parish and McManus. Plaintiffs conclude that, by the actions described, all defendants have denied Plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens.

The complaint, which is all the court may review in a Rule 12(b)(6) challenge, simply does not set forth sufficient facts to state a claim against the McManus defendants under Section 1981. The pleading implies that there was a contract or agreement between the parish and McManus to perform work on a water system, and McManus did not perform properly. The complaint does not allege facts to show that either plaintiff would personally have rights—as a direct party or a third-party beneficiary—under that contract that they could have enforced if not for discrimination by McManus.

A similar third-party beneficiary claim was asserted in International Broth. of Elec. Workers Local 130 v. BE & K Government Group, Inc., 2007 WL 781354 (E.D. La. 2007), where the plaintiffs were employees of a subcontractor, and they lost their jobs when the general contractor breached its contract with the subcontractor. The employees asserted a Section 1981 a claim against the general contractor based on their alleged status as third-party beneficiaries of the contract.

The federal court reviewed Louisiana law, which looks to three criteria for determining whether contracting parties have provided a benefit for a third party: (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee. International Broth. at **4-5, citing Joseph v. Hospital Service Dist. No. 2, 939 So.2d 1206, 1212 (La. 2006). A third-party stipulation, or a stipulation *pour autrui*

as it is known in Louisiana, is never presumed, and the party claiming the benefit bears the burden of proof. Joseph, 939 So.2d at 1212.

The Supreme Court of Louisiana held in Joseph that a contract between a hospital and a medical corporation did not create a third-party benefit in favor of individual doctors affiliated with the medical corporation. The federal court held in International Broth. that the same was true with respect to the employee-plaintiffs and the construction contract. See also Kane Enterprises v. MacGregor (USA) Inc., 322 F.3d 371, 375 (5th Cir. 2003) (sub-subcontractor was not third-party beneficiary, under Louisiana law, to contract between the Navy and general contractor).

The facts alleged by Plaintiffs barely imply the existence of a contract between McManus and the parish. The complaint certainly does not allege that the contract includes a manifestly clear intention to benefit Plaintiffs, that there is certainty as to the benefit the contract is to provide Plaintiffs, or that the benefit is not a mere incident of the contract. Plaintiffs hoped to benefit from the parish's agreement with McManus, but there are no facts alleged to show that their hope was based on a contractual provision that they could enforce under law. Improved water service in their area would be a mere incident of the contract between other parties, just as construction jobs were an incident of the contract in International Broth. Plaintiffs have not alleged facts to show that are potential third-party beneficiaries or have other rights under a contract with either McManus defendant, so they have no Section 1981 claim against those defendants.

Accordingly,

**IT IS RECOMMENDED** that the **Motion for Partial Dismissal (Doc. 5)** filed by the Franklin Parish defendants be **granted** as follows: (1) the court should hold that Plaintiffs may not assert demands on behalf of other residents of their neighborhood; (2) the court should dismiss without prejudice all official capacity claims under 42 U.S.C. § 1983 against the members of the Franklin Parish Police Jury (Ricky Campbell, K.W. Parks, Larry Wheeler, Samantha "Sam" Wiggins, James Harris, and W.H. Robinson); (3) the court should dismiss with prejudice all individual capacity claims under 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Title VI against the members of the Franklin Parish Police Jury (Ricky Campbell, K.W. Parks, Larry Wheeler, Samantha "Sam" Wiggins, James Harris, and W.H. Robinson); (4) the court should dismiss with prejudice all claims against the Franklin Parish Police Jury for punitive damages under 42 U.S.C. § 1983; (5) the court should dismiss without prejudice any claim under the Fair Housing Act; and (6) the court should dismiss with prejudice all claims against the Franklin Parish Police Jury that are asserted under 42 U.S.C. § 1981. All claims against the members of the police jury (Ricky Campbell, K.W. Parks, Larry Wheeler, Samantha "Sam" Wiggins, James Harris, and W.H. Robinson) will have been resolved, so those parties may be terminated from the case if this recommendation is adopted.

**IT IS FURTHER RECOMMENDED** that the **Motion for Partial Dismissal (Doc. 13)** filed by Kenneth McManus and McManus Consulting Engineers be **granted** as follows: (1) the court should dismiss with prejudice all Title VI claims against Kenneth McManus;

and (2) the court should dismiss with prejudice all claims against Kenneth McManus and McManus Consulting Engineers that are asserted under 42 U.S.C. § 1981.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of September, 2016.

_____
Mark L. Hornsby
U.S. Magistrate Judge