# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **RUBY HOOKER, ET AL.** | **CIVIL ACTION NO. 16-0229** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **RICKY CAMPBELL, ET AL.** | **MAG. JUDGE MARK L. HORNSBY** |

## RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 34] filed by Defendants Kenneth C. McManus and McManus Consulting Engineers, Inc. Plaintiffs Ruby Hooker and Alice Hooker oppose the motion. [Doc. No. 42]. For reasons assigned below, the Motion for Summary Judgment is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs filed suit on February 18, 2016, against, among others, Kenneth C. McManus, McManus Consulting Engineers, Inc. ("McManus Consulting"),[1] and the Franklin Parish Police Jury ("FPPJ"). [Doc. No. 1]. Plaintiffs, African-Americans, allege that the McManus Defendants intentionally discriminated against them because of their race. *Id.* They allege that the McManus Defendants failed to provide adequate water and other services to them while, at the same time, providing adequate water and services to white citizens in nearby areas. *Id.*

Plaintiffs allege that their homes are located on the east end of Ellis Lane, a rural road in Franklin Parish. *Id.* Plaintiffs allege that they have "old contaminated pesticide well water that is

---

[1] The Court will refer to McManus Consulting and McManus collectively as "the McManus Defendants."

unsafe for consumption and domestic use." *Id.* They live outside of the current service area of the publicly regulated, yet privately owned, North Franklin Waterworks system, which provides water service to the area in and around the nearby city of Winnsboro. [Doc. No. 48, p. 3].

The FPPJ does not operate, fund, or maintain a public water service, and it has no relationship to the North Franklin Waterworks system. *Id.* In May 2011, the FPPJ decided to apply for a federally-funded grant through the Louisiana Small Towns Environmental Program ("LaSTEP")[2] to allow individuals residing on Ellis Lane, including Plaintiffs, to connect to the North Franklin Waterworks system ("the Ellis Lane Project" or "the project"). *Id.*

To prepare its application, the FPPJ published a "Request for Qualification Statements for Engineering Services" in a newspaper, *The Franklin Sun*, stating its interest in procuring the services of a consulting engineering firm or engineer "to assist in the preparation of the application package and to provide engineering design and inspection services to the project if [the FPPJ] is successful in being funded under the LCDBG Program." [Doc. Nos. 48, 34-4]. The FPPJ also provided a "package" associated with the request that set forth a detailed list of the services sought:

The services to be provided will include, but not be limited to:

a. Assisting in the preparation of the application package (pre-agreement costs).

b. Designing system improvements and construction engineering.

---

[2] LaSTEP is primarily a self-help grant which "was established as a small set-aside from Louisiana's [Community Development Block Grant ("CDBG")] allocation" and "is designed to provide water and wastewater services to communities of low and moderate income residents who have not been successful in obtaining funds through the traditional CDBG grant process." *See* http://www.doa.la.gov/Pages/ocd/cdbg/lcdbg_programs.aspx (last accessed September 25, 2017). The "concept" of the program "is for small communities to solve water and sewer problems through self-help techniques; i.e. volunteer labor" to save project costs by "reducing the project down to the absolute essentials and utilizing the community's resources (human, material and financial) . . . ." *Id.*

> . . . .
>
> c. Assisting the administrative consultant with the construction bid package in conformance with applicable federal requirements and supervising the bid advertising, tabulation, and award process, including preparing the advertisements for bid solicitation, conducting the bid opening, and issuing the notice to proceed.
>
> . . . .
>
> d. Assist in conducting the preconstruction conference.
>
> e. Field staking, on-site supervision of construction work, and preparing inspection reports.
>
> f. Reviewing and approving all contractor requests for payment and submitting approved requests to the governing body.
>
> g. Providing reproducible plan drawings to the Franklin Parish Police Jury upon project completion.
>
> h. Conducting final inspection and testing.

[Doc. No. 34-5, p. 1]. The "package" stated further, "The award will be made to the most qualified offerer [sic] whose qualification statement is deemed most advantageous to the community, all factors considered." *Id.* at 3.

McManus Consulting submitted a qualification-based proposal for services on June 6, 2011. [Doc. Nos. 48, 34-6]. On June 9, 2011, after receiving multiple proposals,[3] the FPPJ unanimously voted to award McManus Consulting the engineering services contract for the Ellis Lane Project. [Doc. Nos. 48, 34-7].

On June 15, 2011, McManus Consulting and the FPPJ entered into a written "Agreement for Professional Services" (the "Agreement") for the Ellis Lane Project. [Doc. No. 34-8]. McManus

---

[3] The McManus Defendants cite no support for the proposition that the FPPJ received multiple proposals; however, they included the proposition in their Statement of Undisputed Material Facts [Doc. No. 34-1, p. 3], and Plaintiffs do not controvert it. [*See* Doc. No. 42-3]. Thus, under Local Rule 56.2, the proposition is deemed admitted.

3

Consulting agreed to provide basic engineering services, including preliminary design, final design, bid services, general administration of construction services, project inspection, and pre-agreement services. *Id.* The Agreement does not obligate McManus Consulting to provide construction services. *Id.*

During the application process, McManus Consulting prepared cost-estimates, performed budget analyses, and prepared a scope of work for the FPPJ to submit with its LaSTEP grant application. [Doc. No. 48, p. 7]. The FPPJ submitted the LaSTEP grant application to the Office of Community Development in the spring of 2012. [Doc. Nos. 48, 34-9]. In June 2012, then-Governor Bobby Jindal notified the FPPJ that he approved the grant. [Doc. No. 34-10]. The FPPJ then entered a contract with the State of Louisiana, through the Division of Administration. [Doc. No. 34-11]. The contract specified that the project must be completed within three years. *Id.* at 1. Neither McManus Defendant signed the contract. *See id.*

For the next several months, McManus Consulting provided engineering designs for the project, assisted the FPPJ in complying with its federal and state grant-related obligations, and revised the plans for the project to include additional homes in the area. [Doc. No. 48, p. 8]. On June 6, 2013, the Office of Community Development informed the FPPJ that it completed its review of the plans and specifications and approved the FPPJ to begin soliciting bids for materials and contractors. [Doc. Nos. 34-12; 34-1].

The FPPJ solicited bids in June and July 2013. [Doc. No. 48, p. 9]. "As consulting engineers on the Ellis Lane Project, and in accordance with its contract with the FPPJ, [McManus Consulting] received all bids and participated in the bid-selection process." *Id.* "Bids were opened on August 20, 2013, and as the lowest bidder, Womack & Sons Construction, was awarded the contract for

construction services." *Id.* However, because the FPPJ did not receive a sufficient number of bids for materials and equipment, those contracts were not awarded at that time. *Id.*

"In January, 2014, [McManus Consulting] participated in a pre-construction conference with Womack & Sons . . . ." *Id.* at 10. "In the spring of 2014, [McManus Consulting], along with the FPPJ, held meetings with impacted landowners to discuss the Ellis Lane Project, including the requirement for citizen participation." *Id.* In June 2014, the FPPJ re-solicited bids for materials and equipment, and awarded the contracts to, respectively, HD Supply Waterworks and Scott Equipment Co. *Id.* "The materials and equipment were delivered to the site in September and October, 2014, and work commenced on or around October 22, 2014." *Id.*

While citizenship participation in the project was a term of the grant, only a few citizens participated.[4] *Id.* The McManus Defendants contend that the project "ground to a staggering halt" after the citizens who participated laid piping to reach their own homes. [Doc. No. 34-2, p. 15-16]. According to Defendants, "As a result of the absolute refusal of some citizens, including Plaintiffs, to participate in the Ellis Lane Project, the entire project has been at a stand-still since February, 2015." *Id.*

Plaintiffs, in contrast, allege that, because they are African-American and members of a low-income, largely African-American community residing on the east end of Ellis Lane, the McManus Defendants intentionally delayed the provision of services under the contract, failed to inspect and supervise the project properly, failed to install a booster pump before requiring them to work, and allowed piping to be left exposed to the elements. [Doc. No. 1]. According to Plaintiffs, the McManus Defendants did provide services and did oversee and supervise the project properly

---

[4] Plaintiffs do not dispute this statement of material fact. It is thus deemed admitted.

with respect to white residents on the west end of Ellis Lane. *Id.*

As a result of Defendants' alleged actions, Plaintiffs brought claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VI of the Civil Rights Act. *Id.* Plaintiffs seek declaratory, injunctive, and compensatory relief. *Id.*

The McManus Defendants dispute Plaintiffs' allegations: "McManus Consulting has fulfilled its obligations under its contract with the FPPJ. McManus Consulting has not intentionally delayed any phase of the project, for any reason, including race. Because the LaSTEP grant requires citizenship participation in the project—indeed mandates it—McManus Consulting can perform no further work until citizen participation resumes and work is recommenced." [Doc. No. 34-2, p. 16].

On November 22, 2016, the Court dismissed Plaintiffs' Title VI claims against McManus and Plaintiffs' 42 U.S.C. § 1981 claims against McManus and McManus Consulting, leaving only Plaintiffs' claims against McManus and McManus Consulting under 42 U.S.C. § 1983 and Plaintiffs' Title VI claim against McManus Consulting. [Doc. No. 25].

On July 27, 2017, the McManus Defendants moved for summary judgment on the remaining causes of action. [Doc. No. 34]. Both Defendants argue that they are not liable under Section 1983 because they are not state actors, and McManus Consulting argues that it is not liable under Title VI because it did not engage in any discriminatory conduct. *Id.* Plaintiffs responded on August 31, 2017, [Doc. No. 42] and the McManus Defendants replied on September 13, 2017 [Doc. No. 45].

I. **LAW AND ANALYSIS**

   A. **Standard of Review**

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[5]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th

---

[5] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. Plaintiffs' Claims Under 42 U.S.C. § 1983

The McManus Defendants are entitled to judgment as a matter of law on Plaintiffs' claims under 42 U.S.C. § 1983 because there is no genuine dispute of material fact concerning whether the McManus Defendants are state actors.

Under Section 1983, a federal cause of action exists against any person, who, acting under color of state law, deprives another of her constitutional rights. 42 U.S.C. § 1983. To prevail, a plaintiff must show that a defendant "(1) deprived her of her constitutional rights and (2) acted under color of state law." *Moody v. Farrell*, 868 F.3d 348 (5th Cir. 2017) (internal quotation marks and quoted sources omitted). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (internal quotation marks omitted).

"Private individuals generally are not considered to act under color of law, but private action may be deemed state action when the defendant's conduct is fairly attributable to the State." *Moody*, 868 F.3d at 348 (internal quotation marks and sources omitted).

"Deciding whether a deprivation of a protected right is fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains.'" *Id.* (quoting *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005)). Here, Plaintiffs allege that the McManus Defendants intentionally delayed the LaSTEP project, failed to fulfill their contractual obligations, and failed to oversee or supervise the project in accordance with their contractual obligations. [Doc. No. 1]. The Court agrees with the McManus Defendants that Plaintiffs' claims, at bottom, are that a private contractor failed to perform properly under a contract with a governmental entity. [*See* Doc. No. 34-2, p. 19]. In that respect, "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).

The McManus Defendants proffer evidence that they are indeed private contractors who operated under a public contract with the FPPJ. McManus is a Louisiana-licensed professional engineer. [Doc. No. 48, p. 1]. He owns and acts as the supervising engineer for McManus Consulting, which is a Louisiana corporation. *Id.* McManus has never been a public official, has never entered into an employment arrangement with any government entity, and has never held himself out to be the exclusive provider of engineering services for any governmental entity. *Id.* Likewise, McManus Consulting has never entered into an exclusive arrangement with any government entity and has never held itself out to be the exclusive provider of engineering services for any government entity. *Id.* at 2. Neither McManus nor McManus Consulting has ever been

employed by the FPPJ as the "Parish Engineer." *Id.*

McManus Consulting enters agreements with various public and private entities to provide engineering services. *Id.* "In almost all cases, [McManus Consulting] provides its services to local, public entities through written contracts after participating in a qualification-based process, known colloquially as the 'request for qualifications' process." *Id.* "[O]ver the past decade, [McManus Consulting] has submitted qualification statements to the FPPJ in connection with publicly-advertised requests for qualifications to provide engineering services . . . ." *Id.* On some occasions, McManus Consulting's proposals were accepted and it was awarded contracts to perform engineering services on public projects; on other occasions, McManus Consulting's proposals were not accepted. *Id.* at 3.

In response to the McManus Defendants' evidence, Plaintiffs offer the purported minutes of the FPPJ's meetings,[6] which cursorily describe McManus as "the parish engineer" and refer to him as "our engineer."[7] [Doc. No. 42-4]. Considering the McManus Defendants' aforementioned evidence, Plaintiffs' vague, imprecise evidence does not create a genuine dispute concerning whether McManus was or is the "parish engineer" for every FPPJ project. The minutes do not detail the relationship between the FPPJ and McManus, and they do not state or indicate, for instance, that the FPPJ employed McManus, that McManus signed an employment agreement with the FPPJ, that the FPPJ exclusively used McManus for engineering services, or that the FPPJ appointed McManus as the parish engineer.

---

[6] The evidence does not indicate who transcribed or summarized the minutes.

[7] The McManus Defendants argue that the meeting minutes cannot be presented in a form that would be admissible in evidence. [Doc. No. 45, p. 6]. The Court declines to reach this argument as the evidence, even if considered, does not create a genuine dispute of material fact.

Rather, the sum of evidence before the Court reveals only that the FPPJ solicited engineering services, McManus Consulting submitted a proposal, the FPPJ considered numerous proposals, and the FPPJ ultimately chose McManus Consulting.[8] The cursory remarks Plaintiffs cite provide no details, and Plaintiffs adduce no other evidence to clarify the lack of detail. An unknown scribe's descriptions of McManus do not—even drawing all permissible inferences in Plaintiffs' favor—amount to significant probative evidence. It is manifest that no matter how engaged the McManus Defendants, as private contractors, were in performing public contracts for the FPPJ, their engagement alone did not render them state actors.[9]

Having decided that the McManus Defendants are indeed private contractors and that, alone, no level of engagement in performing public contracts renders them state actors, Plaintiffs may nevertheless make the requisite showing of state action by establishing "a sufficiently close nexus between the State and *the challenged action* of the regulated entity." *Cornish*, 402 F.3d at 550 (internal quotation marks and quoted source omitted).

Plaintiffs claim that the McManus Defendants are state actors under two of the Supreme Court's tests for deciding whether a private actor's conduct is fairly attributable to the State: the nexus or state action test and the joint action test.[10] [Doc. No. 42-2, p. 3-6].

---

[8] In addition, as Defendants point out, McManus Consulting has performed numerous projects for government entities other than the FPPJ. [Doc. No. 34-6, p. 16].

[9] *See, e.g.*, *Griffin v. Pub. Access Cmty. Television*, 2010 WL 3815797, at *3 (W.D. Tex. Sept. 27, 2010) (holding that a private contractor's contract with a city did not render the contractor a state actor); *Hebrew v. Houston Media Source, Inc.*, 2010 WL 2944439, at *5 (S.D. Tex. July 20, 2010); *Bisby v. Garza*, 2008 WL 2787251, at *4 (S.D. Tex. July 16, 2008).

[10] The Supreme Court has used several tests. *See, e.g., Cornish*, 402 F.3d at 549-50 (summarizing tests). The Supreme Court has not resolved "[w]hether these different tests are actually different in operation or simply different ways of characterizing [this] necessarily

11

Under the nexus or state action test, "state action may be found where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise.'" *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974)). Here, as above, Plaintiffs offer only the FPPJ's meeting minutes to establish the requisite interdependence. The evidence makes no mention of the nexus between the FPPJ and the McManus Defendants' *challenged actions*.[11] As the evidence does not detail any interdependence, it does not create a genuine dispute.

Under the joint action test, a private actor is considered a state actor if the private actor is a "willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). "[T]he plaintiff must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right . . . ." *Polacek v. Kemper Cty., Miss.*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010) (citing *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989)); *see also Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (internal citations omitted) (observing that, to prove a conspiracy, a plaintiff must provide evidence of "an agreement between the private and public defendants to commit an illegal act . . . .").

Here, Plaintiffs claim that there was an "obvious" meeting of the minds and conspiracy to

---

fact-bound inquiry." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

[11] "[T]he *conduct* of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action . . . ." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001) (emphasis added). "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

deprive them of their constitutional rights. [Doc. No. 42-2]. They do not, however, provide any evidence of an agreement or meeting of the minds. Nor do Plaintiffs produce any evidence that the FPPJ was a willful or joint participant in the McManus Defendants' alleged actions. As one court put it, "It is not enough merely to recite that there was an agreement or that defendants conspired or acted in concert, for these are *conclusions*, not *facts*." Polacek, 739 F. Supp. 2d at 952.[12]

For the foregoing reasons, there is no genuine dispute as to whether the McManus Defendants are state actors and whether their conduct is fairly attributable to the State. To this extent, the McManus Defendants' Motion for Summary Judgment is GRANTED, and Plaintiffs' Section 1983 claims are DISMISSED WITH PREJUDICE.

C. **Plaintiffs' Claims Under Title VI**

McManus Consulting is entitled to judgment as a matter of law on Plaintiffs' claims under Title VI because there is no genuine dispute of material fact concerning whether it engaged in intentional discrimination.

McManus Consulting argues that "Plaintiffs can point to no discriminatory action that [it] took against them on account of race for any reason, pretextual or otherwise." [Doc. No. 34-2, p.

---

[12] *See Jones v. Houston Cmty. Coll. Sys.*, 2012 WL 3155573, at *6 (S.D. Tex. Aug. 2, 2012) (granting summary judgment because there was no evidence that a private contractor conspired with the government actor and reasoning that the private contractor's only role was "taking direction from the state actor with which it had a commercial, business relationship."); *see also Harrison v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre*, 2006 WL 558902, *1 (5th Cir. Mar. 8, 2006) (recognizing that while "a non-state actor may be liable under [§ ] 1983 if the private citizen was a willful participant in joint activity with the State or its agents," "[a]llegations that are merely conclusory, without reference to specific facts, will not suffice."); *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004) (noting that conclusory allegations of a conspiracy are, without reference to specific facts, insufficient to find a non-state actor liable under Section 1983).

13

28]. Plaintiffs, in response, offer the affidavit of Plaintiff Ruby Hooker. [Doc. No. 42-2, p. 7].

In reply, McManus Consulting objects to Ruby Hooker's affidavit on grounds that the majority of it is not based on personal knowledge. [Doc. No. 45, p. 5]. Choosing not to move for leave to file a sur-reply, Plaintiffs make no attempt to respond to McManus Consulting's objection.

Federal Rule of Civil Procedure 56(c)(4) provides, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." While an affiant is not required to specifically aver that the affidavit is based upon her personal knowledge, the affidavit must contain enough factual support for a court to determine that the averments were based upon the affiant's personal knowledge. *See Thomas v. Atmos Energy Corp.*, 223 Fed. App'x. 369, 374 (5th Cir. 2007). The factual averments must be admissible in evidence and cannot be conclusory or based on mere information and belief. *See Richardson v. Oldham*, 12 F.3d 1373, 1378-79 (5th Cir. 1994).

Here, the Court will disregard Hooker's averments concerning McManus Consulting.[13] Hooker first avers,"Ken McManus of McManus Consulting Engineering firm (McManus), since 2012, have [sic] consistently and intentionally delayed the construction, thereby failing to fulfill the obligations of the project to provide much-needed clean public water services to Plaintiffs . . . ." [Doc. No. 42-5, p. 2]. This averment is a legal conclusion devoid of detail.[14] Hooker does not

---

[13] Hooker appears to reference McManus and McManus Consulting interchangeably. [*See* Doc. No. 42-5].

[14] *See In re Favre*, 342 F. App'x 5, 8 (5th Cir. 2009) (affirming a district court's decision to strike an affidavit which was "comprised of nothing more than conclusional allegations and legal arguments . . . ."); *Gibson v. Liberty Mut. Group*, 129 F. App'x 94, 95 (5th Cir. 2005) (holding that a district court properly struck portions of an affidavit submitted to oppose a motion

14

explain, for example, what she personally observed McManus Consulting do to delay construction, and she does not explain how she is in a position to know McManus Consulting's state of mind.

Hooker next avers that McManus "failed to oversee and supervise the water project." *Id.* This cannot be based on personal knowledge; she does not aver, for example, that she maintained a constant watch over the project and never observed McManus supervising anyone, or that she surveilled McManus's every phone call and never heard him supervising anyone.[15]

Hooker avers further that McManus "did not provide inspections per regulations." *Id.* She does not, however, state which regulations she is referring to or, more important, explain how she possesses personal knowledge of the absence of inspections.

Hooker also avers, "McManus and the FPPJ did not finalize plans for a booster pump which they should have known was a requirement prior to the laying of any pipes[,]" but she does not provide any foundation revealing how she personally knows what McManus did or did not do. *See id.* Finally, she avers that "McManus received funds to replace sewer systems on the east end of Ellis Lane [] but the funds were never used for their intended purposes and instead were used in white communities." *Id.* She does not, however, reveal how she knows how McManus Consulting utilized the "funds" it received.

---

for summary judgment which contained "legal conclusions and hearsay and was not based upon [the affiant's] personal knowledge."); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) ("Unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.").

[15] *See, e.g. State Farm Fire & Cas. Co. v. Delta Beverage Grp. Inc.*, 401 Fed. App'x. 955, 959 (5th Cir. 2010) (finding that an affidavit, without corroborating evidence, stating that neither the affiant nor his employees plugged a cooler into an extension cord was insufficient to defeat summary judgment because, among other reasons, the affiant could not have personal knowledge of all the actions of his employees over a two-year period).

15

Facially, none of Hooker's averments concerning McManus Consulting are within the ambit of her personal knowledge. As she provides no foundation to depart from this facial assessment, the Court will not consider Hooker's sworn statements in evaluating the instant motion.

Turning to the instant motion, 42 U.S.C. § 2000d provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." To prevail on a claim for relief under Title VI, a private litigant must prove: (1) that the defendant engaged in intentional discrimination based on race, color, or national origin; and (2) that the defendant received federal financial assistance." *Pathria v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455 (5th Cir. 2013).

Here, aside from Hooker's affidavit, Plaintiffs offer only the minutes from an April 9, 2015 FPPJ meeting. [Doc. No. 42-2, p. 7]. The minutes, however, provide no evidence or indicia of an intent to discriminate.

Portions of the minutes simply reflect the same allegations that Plaintiffs allege in this proceeding: "Residents question the jury and accused the jury of discrimination and miss use [sic] of funds in regards to the Ellis Ln. LaSTEP water project. The residents feel that they are being discriminated against due to the fact that the project requires the citizens to lay the water lines." [Doc. No. 42-6, p. 1]. The remaining portions of the minutes that concern the project set forth a non-party's dissatisfaction with the project's progression. *Id.* at 3. In fact, in response to the non-party's concern, McManus assured the individual that McManus "does have an inspector on site when construction is taking place." *Id.* Revealingly, the minutes Plaintiffs rely on also state, "The LaSTEP program requires that the community provide the labor for the water lines to be installed."

16

*Id.*

Plaintiffs provide no significant probative evidence, direct or circumstantial, demonstrating either that McManus Consulting treated them less favorably than similarly situated individuals outside of their protected class[16] or a connection between McManus Consulting's alleged actions and Plaintiffs' race. As Plaintiffs fail to establish the existence of an element essential to their case, McManus Consulting's Motion for Summary Judgment is GRANTED, and Plaintiffs' Title VI claims are DISMISSED WITH PREJUDICE.

## Conclusion

For the foregoing reasons, the McManus Defendants' Motion for Summary Judgment [Doc. No. 34] is GRANTED, and Plaintiffs' claims against Defendants Kenneth C. McManus and McManus Consulting Engineers, Inc. are DISMISSED WITH PREJUDICE.

---

[16] In this respect, Plaintiffs do not establish a *prima facie* case of discrimination. As McManus Consulting phrases it, Plaintiffs do not show that McManus Consulting "provided any services to white residents that [it] refused to provide to Plaintiffs . . . ." [Doc. No. 45, p. 15]. *See Fontaine v. Dallas Cty. Cmty. Coll. Dist.*, 2014 WL 6680711, at *5 (N.D. Tex. Nov. 25, 2014) (granting summary judgment because the plaintiff did not cite any racially-charged statements, provided no evidence that others outside of the protected class received different treatment or that he was the only person to be treated in a certain manner, and did not include any other indicator—other than his assertions—that the defendant's actions were taken with unlawful motives).

Some district courts apply the burden-shifting analysis under Title VII claims to Title VI claims. *See DeLeon v. City of Dallas*, 2008 WL 2941245, at *3 (N.D. Tex. July 25, 2008). The Fifth Circuit has not adopted this analysis under Title VI. *C.f. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 706 (5th Cir. 1994) (observing that Title VI claims and Title VII claims "require different elements of proof."); *Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999) ("*Employment discrimination* claims brought under 42 U.S.C. §§ 1981, 1983, and 2000d are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e et seq.") (emphasis added).

MONROE, LOUISIANA, this 26th day of September, 2017.

                                                                     ROBERT G. JAMES
                                                                      UNITED STATES DISTRICT JUDGE