# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **RUBY HOOKER, ET AL.** | **CIVIL ACTION NO. 16-0229** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **RICKY CAMPBELL, ET AL.** | **MAG. JUDGE MARK L. HORNSBY** |

## RULING

Plaintiffs Ruby Hooker and Alice Hooker ("Plaintiffs") brought this lawsuit contending that Defendants had violated their civil rights. Pending before the Court is a Motion for Summary Judgment [Doc. No. 63] filed by Defendant Franklin Parish Police Jury ("Defendant"). Plaintiffs have filed an Opposition. [Doc. No. 75]. For the following reasons, the Motion for Summary Judgment is **GRANTED**.

## I. FACTS:

Plaintiffs live on the east end of Ellis Lane in Franklin Parish, Louisiana. Defendant is the Franklin Parish Police Jury ("the Police Jury").[1] Plaintiffs allege that Defendant has maintained a racially discriminating policy, pattern and practice of intentionally denying public services to Plaintiffs because they are African American and/or because they reside in a predominantly African American neighborhood. Plaintiffs allege they have been denied public water service, street paving, adequate roads, maintenance and adequate drainage for nearly forty years, whereas, during the same time period, Defendant has provided water service, black top roads

---

[1] Plaintiffs' demands on behalf of others, as well as their demands against the individual police jurors, were earlier dismissed. [Doc. Nos. 20 and 25]. Plaintiffs' demands against the McManus defendants were also earlier dismissed. [Doc. Nos. 49 and 50]. Therefore, the police jury is the sole remaining defendant.

and other public amenities to residents living on the west end of Ellis Lane, which is predominantly white. Plaintiffs allege Defendant has authorized, financed, developed, and/or constructed water projects in white neighborhoods, while continually ignoring the long standing, desperate need for public water and sewer service in their predominantly African-American neighborhood.

Plaintiffs allege that, in 2012, they were the intended beneficiaries of a Community Development Block Grant which received funding from the LaStep Program to provide water and waste services to communities of low-and moderate-income residents, but that Defendant has consistently and intentionally delayed the construction, thereby failing to fulfill the obligations of the project to provide much needed clean public water services to Plaintiffs and residents of the east end of Ellis Lane. Plaintiffs further allege that Defendant provided the same water project to the west end of Ellis Lane, connecting them to the Public Water System with one hundred percent of the work performed by the Police Jury; whereas Plaintiffs and the residents of the east end are required to dig and lay 20 to 25 miles of water pipe along the roadway without any formal assistance or direction.

Plaintiffs allege that the Police Jury "has always discriminated against the residents of the east end of Ellis Lane by not providing clean drinking water, a paved road, maintenance and up keep of the road and adequate drainage to prevent flooding." [Doc. No. 1, p. 6-7]. They allege they have to travel to their home on a dirt road full of potholes while their west end counterparts travel to their homes on a black top road.

Plaintiffs allege they suffer flooding of their roads and homes because there is no adequate drainage and that the Police Jury has intentionally failed to make necessary repairs to a bridge at Deer Creek on Earnest Road despite have received funding to make the repairs.

Plaintiffs allege the Police Jury has failed to provide fire services to them.

Plaintiffs allege the Police Jury uses relatively low income people to qualify for federal funding, but then fails to provide services to these residents.

Plaintiffs assert they have claims for relief under (a) 42 U.S.C. § 1983 for alleged violation of the Fourteenth Amendment (denial of rights/denial of equal protection); (b) 42 U.S.C. § 2000d, Title VI of the Civil rights Act of 1964, for discrimination on the basis of race by a recipient of federal funds; and (c) for purported "reckless indifference" to their rights. Plaintiffs seek damages as well as declarative and injunctive relief.

The Police Jury has now moved for summary judgment as to Plaintiffs' remaining claims. The motion is full briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

### B. Claims Under 42 U.S.C. § 1983

"A constitutional violation is an essential element of a prima facie § 1983 claim against a municipality. . . . Supreme Court and Fifth Circuit case law have long established that a constitutional claim for discrimination requires proof of purposeful discrimination; disparate impact is insufficient. . . . The absence of discriminatory purpose precludes a § 1983 violation." *Walker v. City of Bogalusa,* 168 F.3d 237, 240 (5th Cir. 1999).

#### (1) Fourteenth Amendment Substantive Due Process

In order to establish either a substantive or a procedural due process violation by claiming denial of a property right, a Plaintiff must first prove the denial of a constitutionally protected property right. *Bryant v. City of Madison*, 213 F.3d 267, 274 (5th Cir. 2000). Proof of a property right must be made by reference to state law. *Schaper v. City of Huntsville,* 813 F. 2d 709 (5th

Cir. 1987).

Plaintiffs claim to have a property right to public water service, street paving, adequate roads, maintenance, and adequate drainage. The Police Jury argues that the general powers conferred upon Louisiana police juries to provide services such as road work or drainage are not coupled with *mandates* to exercise any or all such powers. It argues that the statutes do not require police juries to perform these acts, thus making the exercise of such powers discretionary and if the benefit may be granted or denied at the discretion of government officials, it is not an entitlement.

Further, the Police Jury contends that Plaintiffs can establish no duty to provide water, sewer, services, road maintenance, drainage, and fire protection services to Plaintiffs *individually*—as opposed to the public at large. It argues this precludes Plaintiffs' substantive due process claim relating to the alleged denial of public services.

Plaintiffs respond that if the Police Jury has the discretion to act in one way or another, then that discretion may be abused and may be exercised with discriminatory intent, as they contend was done in this case.

The Court finds there is no factual or legal basis for Plaintiffs' denial of services claims.

(a) Water Services

In regard to the intentional denial of water services claim, the Police Jury has produced the Affidavit of Sam Wiggins Boyd, Secretary/Treasurer, establishing that the Police Jury does not own, operate, fund, or maintain a water system, and it does not provide water to anyone. Instead, Franklin Parish residents receive water through services of privately owned water companies, one of which is North Franklin Water Works, Inc. ("NFWW"), which provides water to west Ellis

Lane. NFWW received a franchise from the Police Jury on May 5, 1970, thus allowing NFWW's operations in Franklin Parish. The Police Jury has no involvement with the operations of – or services provided by-- NFWW. No money is provided by the Police Jury.

According to the deposition testimony of Marion Collier, NFWW Member/System Operator, NFWW began supplying water to the west end of Ellis Lane between 1970 and 1972, and it continues to provide this service to west Ellis Lane. Collier stated that the NFWW water line for west Ellis Lane was constructed with no involvement of the Police Jury. Collier indicated his belief that no one on east Ellis Lane applied for membership.

Police Jury President Ricky Campbell confirmed the Police Jury has never maintained any water system and that it did not install a water system for west Ellis Lane. He stated that the Police Jury cannot go lay water lines, it is not in the water line laying business. He indicated that if the Police Jury had undertaken any construction project for the installation of a water line or water lines on west Ellis Lane at any time during 1970-1972, the Police Jury Meeting Minutes would reflect such installation activities and expenditures. Police Jury Secretary/Treasurer Boyd examined all pertinent records for that time period and attested there was no record of any such work by the Police Jury.

The only evidence offered by Plaintiffs on this issue is the deposition of Plaintiff Ruby Hooker wherein she stated that in the 1970's, she observed workers she *thought* were Police Jury workers digging trenches and waterlines connecting the lines to West end residences. However, her testimony was based on "just passing by" for a few seconds, she did not know the workers or see any proof the Police Jury owned any of the equipment at the scene, and no one told her they were working for the Police Jury. The Court finds there is no genuine issue of material fact in

regard to the denial of water services claim, and the Police Jury is entitled to judgment as a matter of law.

(b) Sewer Services

Plaintiffs allege that "Defendants received funds to replace sewer systems on the east end of the Ellis Lane Community, however, the monies were never used for its intended purpose but used in white communities." [Doc. No. 75-1, p. 5].

Police Jury Secretary/Treasurer Boyd stated in her affidavit that the Police Jury does not provide sewer services, and it specifically does not provide sewer services to any part of Ellis Lane. She stated that no funds were received by the Police Jury to implement or replace sewer systems on Ellis Lane.

Police Jury President Campbell also testified that the Police Jury did not receive any funds to replace any sewer systems on west or east Ellis Lane. Plaintiff Ruby Hooker cannot describe the specific sewer systems she claims were supposed to be replaced on west or east Ellis Lane. Nor have Plaintiffs produced any other evidence to refute the Police Jury's evidence. Conclusory statements do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment. *Lechuga v. Southern Pacific Transportation Company,* 949 F.2d 790, 798 (5th Cir. 1992). The Court finds there is no genuine issue of material fact as to the denial of sewer services claim, and Defendant is entitled to judgment as a matter of law.

(c) Fire Protection

Plaintiffs allege that they have been discriminated against because the Police Jury has not provided fire protection services to them.

Police Jury Secretary/Treasurer Boyd attested that the Police Jury does not maintain a Fire Department. Rather, the Police Jury has created five (5) fire protection districts, or fire service districts, pursuant to its statutory authority. The fire districts are independent political entities that are not connected to or controlled by the Police Jury. Although independent Board Members for each fire protection district are appointed by the Police Jury, the decisions, facilities, installations, operations and equipment of the fire protection districts are not in any manner linked to or controlled by the Police Jury; nor are the fire protection districts overseen or managed in any manner by the Police Jury. Plaintiffs have failed to refute the Police Jury's evidence in any way. The Court finds there is no genuine issue of material fact as to the denial of fire protection services claim, and Defendant is entitled to judgment as a matter of law.

(d)  Paved Road

Plaintiffs allege that they have to travel to their home on a dirt road full of potholes while their west end counterparts travel to their homes on a black top road.

Police Jury President Campbell testified that the west end of Ellis Lane (which connects with a State Highway) was blacktopped before he became a Police Jury member 24 years ago. The Police Jury uses "chip seal" as a low cost alternative to asphalt for road surfacing. (In chip sealing, a thin film of heated asphalt liquid is sprayed on the road surface, followed by the placement of small aggregate chips thereon; the chips are then compacted to orient them for maximum adherence to the asphalt, thus producing a hard surface for the road.) Campbell testified the Police Jury does not have the money to do overlay – asphalt roads. Campbell attested that chip seal has been done on east Ellis Lane, just like the Police Jury does on all roads now.

Police Jury Secretary/Treasurer Boyd stated that the Police Jury stopped doing asphalt

8

years ago due to the expense. At the Police Jury's request, McManus Consulting Engineers, Inc., prepared a Priority List (Capital Improvement Road Plan) in 2006, which rates 528 Franklin Parish roads (comprising approximately 600 miles of roadway) according to multiple factors which determine a specific finding of "points" for each road. The gravel portion of east Ellis Lane ranked No. 4 on the Priority List and was chip sealed on or around 2006. Boyd stated the Priority List lacks any racial component, and instead assigns points according to factors such as Length in Feet; Road Connections; Estimated Cost; Cost per House; Number of Houses; Right-of-Way; Ditching Preparation; Safety; and Road Use.

Campbell testified that since he became a Police Juror 24 years ago, no parish road has been paved during that time and that no parish road has gone from gravel to asphalt.

Plaintiffs respond with their own conclusory statements that the roads on the west end of Ellis Lane are better than the roads on the east end. Plaintiffs also offer the deposition of Police Juror Leroy Scott in which he states the roads are better maintained in the white neighborhoods; the roads in predominantly black neighborhoods are not in the same condition as predominantly white neighborhoods; roads are not well maintained on the east end of Ellis Lane, a predominantly black neighborhood; the jury loses money continually chip sealing the roads, but the potholes remain; the east end Ellis Road residents are discriminated against in matters of roads, ditches, water and water drainage; and he spoke to a legislator in Baton Rouge who told him that Franklin Parish was one of the most prejudiced places in the State. He states the basis for his personal knowledge of Ellis Road discrimination is "you go out there and live there for six months." Scott nevertheless estimates that 40% of the *west* Ellis Lane residents, the neighborhood which he says gets favored treatment, are African-American.

Plaintiffs also offer the deposition testimony of Bessie Lain, who stated that the Police Jury specifically discriminated against Alice and Ruby Hooker based on race; she personally observed specific acts of Police Jury discrimination against all residents of the east end of Ellis Lane; the Police Jury denied services to the residents of the east end of Ellis Lane based on race; and the Police Jury intentionally discriminated against east end residents in failing to repair the east end roads.

A plaintiff's personal belief that he was subjected to racial discrimination, however genuine that belief may be, cannot form the basis for judicial relief. *See Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 567 (5th Cir. 1983). Conclusory statements do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment. *Lechuga v. Southern Pacific Transportation Company, supra.*

The Court finds there is no genuine issue of material fact as to the denial of paved road claim, and Defendant is entitled to judgment as a matter of law. The deposition testimony of Leroy Scott and Bessie Lain are nothing more than conclusory statements with no facts to support those statements.

(e) Road Maintenance/Drainage

Plaintiffs allege they have been denied road maintenance/drainage services. Franklin Parish is a rural parish, with farming as its main industry, according to Campbell. The Police Jury is constantly patching the roads due to the farmers' use of heavy equipment on parish roads, whether chip-sealed, gravel or hard-top. Between 2013 and 2017 there were more than 200 work orders for Ellis Lane. Road repair and drainage complaints are handled in the order in which they

are received. Boyd testified the Police Jury keeps track of road condition/drainage and other complaints through a spreadsheet summarizing pertinent information in relation to the complaint and the response thereto. She stated race is not a factor in any Police Jury employee's response to road or drainage requests or complaints.

Plaintiffs again respond with only conclusory allegations, which are insufficient to overcome the Police Jury's evidence. Accordingly, the Court finds there is no genuine issue of material fact as to the denial of road maintenance/drainage protection claim, and Defendant is entitled to judgment as a matter of law.

(f) Drainage/Flooding Protection

Plaintiffs allege they suffer flooding of their roads and homes because there is no adequate drainage. Campbell testified that flooding in Franklin Parish affects black *and* white citizens. As a school bus driver for 18 years, he personally observed that flooding is a parish-wide problem. Roads in predominately white areas, such as Porter Road and Robinson Dairy Road, flood, too. The Police Jury gets flooding complaints from residents of west Ellis Road as well as east Ellis Road. Campbell describes Franklin Parish as being like a bowl in places, and it just has low areas that are going to flood.

Plaintiffs fail to refute any of the Police Jury's evidence. The Court finds there is no genuine issue of material fact as to the denial of drainage/flooding protection claim, and Defendant is entitled to judgment as a matter of law.

(g) Deer Creek Bridge

Plaintiffs further allege that the bridge on Deer Creek on Earnest Road is out "and the Franklin Parish Police Jury has knowledge; however, has intentionally failed to make the necessary

11

repairs, in spite of the fact they receive funding to make the repairs." [Doc. No. 1, p.7]. Yet Plaintiffs have produced no evidence to show the Defendant's supposed receipt of funding from any source for repair of Deer Creek Bridge and no evidence establishing intentional racial discrimination relating to the repair of the bridge. The Court finds there is no genuine issue of material fact as to the Deer Creek Bridge claim, and Defendant is entitled to judgment as a matter of law.

    (h)  Monell considerations

Even if Plaintiffs had produced evidence to support one or more of their denial of services claims, the Police Jury would be entitled to summary judgment under *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978).

The Court finds no policy, practice or custom on behalf of the Police Jury that resulted in a denial of services. In *Campbell v. Bowlin,* 724 F.2d. 484, 489 (5th Cir. 1984), the Fifth Circuit addressed a similar claim, noting, "[i]n proving his claim against the city … Campbell must show that he was denied municipal services on account of race and that his denial was the result of an official policy or custom of the city [under] *Monell.*" For purposes of municipal liability, an official policy may be a policy statement, ordinance, regulation or decision, or "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson v. Moore,* 958 F.2d 162, 167 (5th Cir. 1992). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City,* 130 F. 3d 162, 167 (5th Cir. 1997).

The Police Jury has produced specific factual evidence which establishes there is no policy, practice or custom that resulted in a denial of services based on race. Defendant does not provide water, sewer, or fire protection services to any one of any race. While the Police Jury does maintain roads, parish roads are chip-sealed in accordance with a Priority List (Capital Improvement Road Plan) through which roads are hard surfaced on the basis of multiple factors which do not include race. The testimony of Police Jury President Campbell and Secretary/Treasurer Boyd establishes that there is no policy under which race affects the timing or manner of responses to road repair requests or drainage complaints.

Plaintiffs have produced only conclusory allegations, unsubstantiated assertions, and less than a scintilla of evidence to support their claims that Defendant has engaged in a "pattern" of conduct to deny them any services on the basis of Plaintiffs' race.

For these reasons, the Court finds there is no genuine issue of material fact, and the Police Jury is entitled to judgment as a matter of law denying and dismissing Plaintiffs' Fourteenth Amendment Substantive Due Process claims.

### (2)  Fourteenth Amendment Equal Protection

"To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes County,* 354 F.3d 414, 424 (5th Cir. 2004). Discriminatory intent means "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Fennel v. Marion Independent School Dist.,* 804 F.3d. 398, 412 (5th Cir. 2005).

Allegations of discriminatory intent that are merely conclusory without reference to specific facts, will not suffice. *Fennel, supra* at 412.

"Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d. 450 (1977). Further, as stated in *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir. 1994), "unsubstantiated assertions are not competent summary judgment evidence . . .'Summary judgment … may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, … if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' *Kirm v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir. 1993)."

Plaintiffs allege the Police Jury has provided water service, black top roads and other public amenities to white residents, including those on the west end of the same street as them, and has provided water and sewer services to the homes of the residents on the west end of Ellis Lane. However, the uncontroverted evidence shows that Defendant does not provide water or sewer services to *anyone.* Plaintiffs have produced no evidence to show that chip-sealing the east end of Ellis Lane was based on race. Plaintiffs have acknowledged that there are black individuals living on the west end of Ellis Lane, and that there are white individuals living near Ellis Lane without access to running water.

Plaintiffs also allege Defendant has authorized, financed, developed, and/or constructed water projects in white neighborhoods. Plaintiff Ruby Hooker testified "water projects" meant LaSTEP grants. However, the fact of LaSTEP grants of other projects in Franklin Parish does not show a denial of equal protection to Plaintiffs, especially considering the Ellis Lane Project

LaSTEP grant specifically sought to benefit Ellis Lane residents, including Plaintiffs.

Plaintiffs allege that Defendant provided the same LaStep water project to the west end of Ellis Lane with one hundred percent (100%) of the work being performed by the Police Jury, whereas residents on the east end were required to lay the pipe themselves. However, the evidence shows the west end of Ellis Lane was not a part of the Ellis Lane LaSTEP project, inasmuch as water had been provided to the west end of Ellis Lane by NFWW since the 1970s. The LaSTEP program did not even exist in the 1970's. As indicated above, the only evidence that Plaintiffs produced that Defendant had laid the water line on the west end of Ellis Lane was the unsubstantiated and sketchy testimony of Plaintiff Ruby Hooker that in the 1970's she saw persons she thought were Police Jury workers whom she was unable to identify laying the line. However, the records of the Police Jury refute that allegation.

Plaintiffs allege that residents on the east end of Ellis Lane have to travel to their home on a dirt road full of potholes, whereas their west end counterparts travel to their homes on a black top road. However, Plaintiff Ruby Hooker admitted that east Ellis Lane is chip-sealed and not a dirt road. The evidence shows it has been chip-sealed since 2006. Potholes appear to be a parish-wide problem. Other than Plaintiffs' unsupported speculation, there is no evidence that race plays any role in road repair work. Police Jury records reflect multiple and continuing road repair efforts on east Ellis Lane. Plaintiffs produced no evidence to show the east end of Ellis Lane is treated differently than other parish roads.

In summary, Plaintiffs have produced no evidence to show Defendant intentionally denied any services to Plaintiffs while favoring others, or that Plaintiffs were denied any services on the basis of their race. For these reasons, the Court finds there are no genuine issues of material fact

15

and Defendant is entitled to judgment as a matter of law, denying and dismissing Plaintiffs' Fourteenth Amendment Equal Protection claims.

### C. Claims under Title VI

Title VI provides that "[n]o person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d. "In order to state a cause of action for a violation of Title VI, the plaintiff must plead facts establishing that the defendant intentionally discriminated on the basis of race, color or national origin." *Landor v. Society of the Roman Catholic Church of the Diocese of Lafayette,* No. 13-2759, 2014 WL 4630692, *7, *citing Price ex rel Price v. Louisiana Dept. of Education,* 329 Fed.Appx. 559, 561 (5th Cir. 2009).

Plaintiffs have alleged the parish has received, and continues to receive, Federal Community Development Block grants that are used for water and sanitary service programs, and reference the Ellis Lane LaSTEP project, together with a Community Water Enrichment Grant. Plaintiffs have alleged that the Police Jury (and Parish Engineer Kenneth McManus, who was earlier dismissed as a defendant) denied the benefits under the Ellis Lane Project by consistently and intentionally delaying construction of the project to provide clean public water services to Plaintiffs. Plaintiffs make the general allegation that the Defendant has used relatively low income people to qualify on federal funding, but has not provided service to these residents.

To state a cause of action under Title VI, a plaintiff must allege that he is the "intended beneficiary of, an applicant for, or a participant in a federally funded program". *Azteca Enterprises, Inc. v. Dallas Area Rapid Transit,* 31 Fed.Appx 839 (5th Cir. 2002).

The only federally funded program that Plaintiffs have specified that they were the intended beneficiaries of is the Ellis Lane LaStep project. Plaintiffs generally allege that the Defendant intentionally delayed the project, failed to notify them of the availability of rental equipment to lay the water lines, and did not finalize plans for a booster pump.

Police Jury Secretary/Treasurer Boyd stated that in 2011, Defendant initiated the process of seeking funds through a LaSTEP grant to provide water to Franklin Parish residents on the east end of Ellis Lane. This was a "self-help" project which required the residents to dig the trenches and lay the water lines. The water line contemplated by the LaSTEP Project would be owned and operated by NFWW as part of its privately owned and operated water system. As part of the LaSTEP application process, the Police Jury held numerous public hearings, during which the self-help aspect of LaSTEP was specifically discussed. Plaintiff Ruby Hooker acknowledged she attended meetings of the Police Jury and was told it was a self-help program.

Grant money was used for "specialty services" such as digging under roads, setting valves, pressure testing, creek crossings, and setting water meters. Grant money was also used to buy materials and some equipment. The LaStep grant specifically authorized the rental of equipment including a backhoe and mini-excavators for the purposes of digging trenches to place the pipe in and move material around, backfilling, and smoothing. The rented equipment was to be used by the citizens that were going to put the pipe in the ground.

The materials and equipment were delivered to the site in September and October, 2014. Despite the Project's requirement of self-help through citizen participation only one individual participated in the excavation of a trench and the laying of a water pipeline to his home. Kendall Magee, the Grant Manager, testified in his deposition that it was his understanding the residents

17

of east Ellis Lane had refused to lay the pipe for the Project, and "were not going to do the work." According to Police Jury Secretary/Treasurer Boyd, the Project has stalled because the overall majority of residents in the Project area have not performed any work in fulfilment of the Project's self-help requirements.

Contrary to the general allegations of Plaintiffs, Boyd stated that the Police Jury never took any action to delay the Project, and in fact, sought an extension of the Project construction deadline in hopes of having the Project completed. The Police Jury's request for an extension was granted, and on July 31, 2015, the Police Jury and the Division of Administration entered into a new contact, extending the Project completion deadline until July 31, 2018.

Concerned about the lack of citizen participation, Police Jury President Campbell asked if inmate labor could be used for the Project, but that request was denied by the Office of Community Development. Secretary/Treasurer Boyd then contacted Louisiana Delta Community College and ULM, seeking student volunteers; however, her efforts were unsuccessful. The project is presently at a standstill.

Plaintiffs allege they have been discriminated against because they have to dig the trenches and lay the water pipes themselves, whereas the Police Jury "provided the same water project to the west end of Ellis Lane . . . with one hundred percent (100%) of the work performed by the Franklin Parish Police Jury."

However, the evidence shows that west Ellis Lane was never part of the LaSTEP project inasmuch as water has been provided to that area by NFWW since the 1970s. The Plaintiffs' allegation that the Police Jury provided the labor in the 1970s to install the water line on west Ellis Lane has been addressed above.

Plaintiffs generally assert they have not participated in the self-help portion of the project because they were not told about the availability of the rental equipment (which the Defendant disputes), but that has nothing to do with racial discrimination and does not explain their continued refusal to participate. They also assert that they could not lay the water line until plans for a booster pump had been finalized (which the Defendant disputes), but again, that does not evidence racial discrimination and does not explain their continued refusal to participate.

For these reasons, the Court finds there is no genuine issues of material fact, and Defendant is entitled to judgment as a matter of law, denying and dismissing Plaintiffs' Title VI Claims.

**D.     Deliberate Indifference**

Plaintiffs accuse the Police Jury and all its decision makers with deliberate indifference, gross negligence and reckless disregard for the Constitutional Statutory rights of the residents of the east end of Ellis Lane to have safe drinking water. Plaintiffs have not set forth any specific basis for these charges, other than the allegations the Court has addressed above.

Furthermore, this allegation is refuted by the actions of the Police Jury in applying for the LaSTEP grant, and in seeking several extensions, so as to provide residents of the east end of Ellis Lane, including Plaintiffs, with a water supply.

For these reasons, the Court finds there is no genuine issue of material fact, and the   Police Jury is entitled to judgment as a matter of law, denying and dismissing Plaintiff's Claims of Deliberate Indifference.


**III.    CONCLUSION**

The Plaintiffs make numerous claims of discrimination and other Constitutional violations

against the Defendants. However, the Plaintiffs have produced no material facts to support any of their allegations. For the reasons set forth, Defendant's Motion for Summary Judgment [Doc. No. 63] is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 16th day of April, 2018.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**